AVERY v. ADAMS, *Appellant.*

1. **Evidence**: COPY OF PATENT. An exemplification of a patent from the United States certified by the Commissioner of the General Land Office, is receivable in evidence without proof of the loss of the original. (*Barton v. Murrain*, 27 Mo. 235.)

2. **Evidence of Custom**: POSSESSION OF A PATENT. It appeared in an action of ejectment that a patent issued to A had been from an early day in the possession of W. By way of explaining this fact and in support of a title claimed under W, evidence was offered by the defendant to show that it was the custom, in early times in this State, to assign duplicate certificates of land entries by writing on the back of the certificate, and that such assignments were usually recognized as sufficient conveyances. *Held*, that this evidence, if admitted, would not have been of itself proof that such an assignment had been made of the certificate of entry on which the patent in question was issued, and without some proof of such assignment the fact that W had possession of the patent could avail the defendant nothing.

3. **Statute of Limitations**: POSSESSION WITHOUT COLOR OF TITLE:

COLOR OF TITLE WITHOUT POSSESSION : CASE ADJUDGED. In an action of ejectment for an eighty acre tract, the following state of facts appeared : The land was entered by plaintiffs' ancestor in 1832, and a patent issued to him in 1835, after his death. In 1833 W began to claim the land. In 1841 he mortgaged it to N, and in 1842 sold it to N, who died in 1865. It was subsequently partitioned among the heirs of ·N, and defendant claimed title by deed from one of the heirs. It was assessed to W from 1832 to 1843, and from that time to N until the sale to defendant, and after that to defendant. Between 1862 and 1872 rails were made on the land two or three times, and trespassers were several times driven off by N. The land was known in the neighborhood as N's. W owned a tract adjoining the tract in controversy, and from 1837 to his death in 1853 cultivated a field of twenty acres, five acres of which were embraced in the land in controversy. This latter fact was not known to N when he bought of W, and never became known until a survey was made in 1857. After it became known to him he took no steps to dispossess the widow of W who was continuing her husband's possession. Nor did she ever become his tenant as long as she remained· in possession of the field, which was until 1864. From that year no part of the eighty acres in controversy was occupied by any one until defendant entered in 1874. On this state of facts, *Held*, that defendant could not successfully interpose the statute of limitations as a defense. The possession of W and his widow was without color of title, while N's color of title was unaccompanied by possession.

*Appeal from Franklin Circuit Court.*—HON. A. J. SEAY, · Judge.

*J. Halligan* for appellant.

· *J. W. Booth* for respondents.

NORTON, J.—This is a suit by ejectment to recover possession of the west ·half of the northeast quarter of section 22, township 43, range 2, in Franklin county. The answer admits possession by defendant; denies that plaintiffs have title, avers title in defendant and pleads the statute of limitations. Plaintiffs obtained judgment, from which defendant has appealed. We will consider the exceptions taken to the action of the trial court in the order they are presented in the motion for a new trial.

Plaintiffs, who were shown to be the heirs·of John W.

Avery, deceased, and who claimed title through him, were permitted to offer in evidence an exemplified copy of a patent issued to said Avery in September, 1835, on an entry made in 1832, to the land in question, to which defendant objected on the ground that the original had not been accounted for. This objection was properly overruled. It was held in the case of *Barton v. Murrain*, 27 Mo. 235, that an exemplification of a patent certified by the commissioner of the general land office was properly received in evidence without proof of the loss of the original.

*1. EVIDENCE: copy of patent.*

It is also objected that the court erred in refusing to allow defendant to show that it was the custom in the early days of the State, and was usual for parties to assign duplicate certificates of land entries by writing on the back of the duplicate, and that such assignment was usually recognized as a deed or sufficient conveyance. We cannot see upon what principle this evidence could have been received. Under the law of Congress an assignment of the certificate of entry would have authorized the issuance of the patent in the name of the assignee, and if defendant intended to rely upon such assignment, the evidence offered was not competent to establish it. Nor was it admissible for the purpose of explaining Withington's possession of the patent, which could avail nothing to those claiming under Withington, unless it was also shown that he became the possessor of it by virtue of an assignment of the certificate or in some other way recognized by law as sufficient to pass a right to it.

*2. EVIDENCE OF CUSTOM: possession of patent.*

It is also insisted that error was committed by the court in excluding, on plaintiffs' motion, the deeds and records offered by defendant to prove his title. It is very clear that the evidence thus excluded (which is hereinafter referred to) did not establish, nor tend to establish, that defendant was the owner of the legal title. The evidence wholly failed to show that John Withington, from whom

*3. STATUTE OF LIMITATIONS: possession without color of title: color of title without possession: case adjudged.*

defendant claimed the title through these deeds and records, ever had any title to the land in dispute.

It is, however, claimed that although the deeds did not establish title, as the other evidence tended to show actual adverse occupancy thereunder of part of the tract, with a claim of ownership and acts of ownership exercised over the whole tract, it was error to exclude them from the consideration of the jury. The proposition thus assumed is undoubtedly correct provided there was evidence of such adverse possession for a sufficient length of time to bar the action of plaintiffs. We do not think that the evidence shows such possession. All the evidence touching that subject, as well as the written evidence found in the deeds and records offered by defendant, was, in substance, as follows : John Withington claimed the land as early as 1833 ; the patent therefor was issued September 9th, 1835, to John W. Avery. On January 1st, 1841, Withington mortgaged the land to William North to secure a note for $790.98, which was duly recorded the same year. On the 22nd day of June, 1842, John Withington sold the same land to William North, and Hamilton, sheriff, conveyed the interest of Withington and Potts in the same land to William North, by deed, dated the 11th day of April, 1846. William North died in 1865. On the 22nd day of June, 1872, in partition among the heirs of William North, in St. Louis circuit court, this land was allotted to Joseph W. and Nannie M. North, who, in April, 1873, conveyed it to appellant. It was assessed to John Withington from 1832 to 1843, inclusive, and to North from 1843 till his death, and from then to his estate until sold to appellant, and after that to appellant. John Withington owned a tract of land adjoining the land in dispute, and, from at least 1837 till his death, cultivated and rented out a field of about twenty acres, about five acres of which field in fact was on the land in dispute, and the rest of the field was on Withington's adjoining tract. There is no evidence that any part of this field was ever known to be on the land in dispute

until the fact was ascertained by a survey in 1857. When Withington sold to North, in 1843, he was in possession of this field, and did not transfer his possession to North, but continued to hold and use the whole field as before, and from his death in 1853 to 1864, his widow, Sarah Withington, kept possession of the whole field; some years cultivating it and some years renting it out. James M. Ming was attending to Mr. North's business in 1857, and suggested to him to have the woodland tract surveyed in order to ascertain the line between the land in dispute in this action and the Withington tract adjoining it; and, as agent of Mr. North, had the land surveyed to ascertain where the line was; and four or five acres of the cleared land was found to be on the eighty in dispute, and Ming reported the fact to North, and he did nothing about Mrs. Withington's possession, and from that time Ming had the property assessed and paid the taxes; North did not turn Mrs. Withington out of possession, or in any way interfere with it; from 1861 or 1862 till 1872, rails were made on said land two or three times, numbering in all 1,000. In 1869, 1870, 1871, trespassers cut railroad ties upon it, and were driven off by North. The land was known in the neighborhood as North's, who had a farm adjoining it. Besides the Withington field there was no improvement on the land till 1874, when defendant built a house or cabin on it. There was no evidence tending to show that the land was not suitable for farming purposes nor susceptible of cultivation. There was no evidence that North, or those claiming under him, previous to 1874, were in the actual possession of the five acres of the land in dispute and included in the twenty acre Withington field. On the contrary, Withington remained in possession of the whole field after he conveyed to North in 1843, the same as before the conveyance, till his death in 1852 or 1853, after which time his widow remained in possession by herself and tenant till 1864, when the fence was washed away, and the land was not afterwards occupied or cultivated till about

1874, when defendant went upon it. It also appears that it was not known that any part of the land in dispute was included in Withington's field till 1857, when the lines were run between the land in controversy and the Withington tract, and the fact ascertained, and that after its ascertainment Mrs. Withington remained in possession as before. There is nothing in the evidence to show that either Withington, in his life-time, or Mrs. Withington, after his death, held as tenant of North. The Withington possession was possession without color of title, and North's color of title was unaccompanied by possession. We are, therefore, of the opinion that the court was justified in excluding the deeds offered in evidence and also in refusing the instructions asked by defendant upon the subject of adverse possession.

It is also insisted that the verdict, as shown by the transcript, was for " the plaintiff," and not for "plaintiffs," and there being more than one plaintiff, therefore the judgment should be reversed. The recital of the verdict contained in the judgment, is as follows: " We, the jury, find for plaintiffs    *    *" If this was a mis-recital of the verdict defendant should have called the attention of the court to it in his motion to set aside the judgment. This was not done, and as the judgment follows the verdict as recited therein, we shall not, on account of the alleged discrepancy, disturb the judgment. Judgment affirmed. All concur.

AFFIRMED.